53 CCPA

### Application of Martin N. ORNITZ and Ray H. English.

### Patent Appeal No. 7457.

United States Court of Customs and Patent Appeals.

Nov. 4, 1965.

Eugene F. Buell, Pittsburgh, Pa., for appellants.

Clarence W. Moore, Washington, D. C., (J. E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 1 through 10 of appellants' application serial No. 67,874, filed November 1, 1960, for "Alloys." No claim has been allowed.

Appellants' application discloses:

\* \* \* There has long been a need for an alloy having high strength and low creep, as well as resistance to corrosion, in the temperature range 1400° F. to 2000° F., particularly for furnace parts such as annealing furnace trays, furnace rails and similar furnace parts. Conventional alloys used for these applications have not been entirely satisfactory for furnace parts in this temperature range or at higher temperatures.

We have been successful in providing an alloy composition having surprising strength and low creep characteristics in the temperature range 1400° F. to 2000° F. Then beneficial characteristics are obtained by controlling the amount of carbon, which is particularly critical, to be at least 0.30% in the composition which should preferably be within the following range:

| | |
|---|---|
| Carbon | about 0.30% to about 0.90% |
| Chromium | about 18% to about 30% |
| Nickel | about 15% to about 35% |
| Manganese | about 0.8% to about 4% maximum |
| Silicon | about 0.9% to about 3.5% maximum |
| Balance | iron with residual impurities in ordinary amounts. |

While the foregoing range is satisfactory for most purposes, we prefer to maintain our composition within a somewhat narrower range of:

| | |
|---|---|
| Carbon | about 0.35% to about 0.75% |
| Chromium | about 21% to about 27% |
| Nickel | about 20% to about 30% |
| Manganese | about 1.2% to about 2.4% maximum |
| Silicon | about 1.2% to about 2.5% maximum |
| Balance | iron with residual impurities in ordinary amounts. |

A single preferred composition would have the following analysis:

| | |
|---|---|
| Carbon | 0.55% |
| Chromium | 23% |
| Nickel | 25% |
| Manganese | 1.8% |
| Silicon | 2.0% |
| Balance | iron with residual impurities in ordinary amounts. |

We have found that the foregoing broad analysis is critical, particularly as respects the carbon range as well as the manganese and silicon ranges and that the deviations at the extremities of the broad range will markedly increase the creep of the alloy so as to make it unsatisfactory for high temperature use.

Claim 1 reads:

1. A low creep, high strength, high temperature alloy comprising about 0.30% to about 0.90% carbon, about 18% to about 30% chromium, about 15% to about 35% nickel, about 0.8% to about 4% manganese, about 0.90% to about 3.5% silicon and the balance iron with residual impurities in ordinary amounts.

Claims 5 and 8 recite an alloy and a furnace part, respectively, of substantially the composition recited in claim 1, which composition corresponds to the broadest range disclosed by appellants. The remaining group of claims includes

claims to an alloy, article or furnace part with compositions corresponding substantially to appellants' "narrower range" or their "single preferred composition."

All the claims stand rejected as "unpatentable over" Payson patent No. 2,706,696, issued April 19, 1955. It discloses alloy compositions that are age and precipitation hardenable to form austenitic steels. Payson states that "the most important application of these steels will be for *high temperature service* where *resistance to rupture* under *high stress* conditions is required together with *oxidation resistance*." [Emphasis added.] The patent further states:

> The broad range of analysis of steel in accordance with my invention, which is age hardenable in the magnitude aforesaid, is that containing about: 0.4 to 1.5% carbon, 0.1 to 25% manganese, up to 25% nickel, with the nickel and manganese contents aggregated 8 to 28%, 12 to 30% chromium, up to 5% silicon, and the balance substantially all iron, except for the usual residuals within commercial tolerances, such as phosphorus, sulfur, etc. A preferred range of analysis is that containing about: 0.45 to 0.8% carbon; 1 to 10% manganese; 1 to 20% nickel; with the sum of nickel and manganese limited to about 9 to 28%; 15 to 25% chromium; 0.05 to 3.5% silicon, and the balance substantially all iron as aforesaid.

The patent then sets out narrower ranges of analysis which undergo optimum age hardening, one of which, designated IV, contains 0.45 to 0.70% carbon, 0.5 to 4.0% manganese, 0.30 to 3.50% silicon, 12.0 to 25.0% nickel, and 18.0 to 25.0% chromium, with the balance iron. A number of specific compositions, as distinguished from ranges, are also set forth.

The examiner's position as expressed in the answer is:

> * * * The reference discloses chromium-nickel-carbon-manganese-silicon steel alloys for high temperature service where resistance to rupture under high stress conditions is required together with oxidation resistance that have constituents in percentage ranges that are considered to teach and anticipate the claimed composition. Column 3, specific range of analysis Number IV and Claim 6. No patentable invention is seen in making articles, such as furnace parts, for high temperature use from the alloy steels of the reference because the reference clearly discloses the general properties and utility of the alloy steels that would lead a skilled metallurgist to employ the steels in just this way. * * *

In affirming the examiner, the board held there was "no evidence in the record * * * that appellants have produced a new alloy product having characteristics and properties which differ from the alloys of Payson." It added that the use of the term "about" in the claims "permits some unknown tolerance and does not limit the claims to the precise values."

Appellants concede that there is "a certain overlap in the extremes of the Payson range of composition with the composition of * * * [their] application." They urge, however, that there is nothing in Payson which would lead a man skilled in the art directly to their alloy as a solution to the problem of providing a low creep alloy. They also point out that Payson discloses age hardening which may take place at 1100° F. to 1400° F. Appellants further contend there is "no suggestion in the patent of achieving any corrosion resistance or creep resistance at the high temperatures disclosed in the present application," noting that "the highest tempera-

ture of use mentioned in the Payson patent is 1600° .F."

We think the issue here bears a close resemblance to that in In re Nehrenberg, 280 F.2d 161, 47 CCPA 1161. There, the court considered claims to a steel wherein there was a very substantial overlap between the claimed ranges of elements and the ranges disclosed in a reference. Finding nothing in the record that would support a holding that the relatively slight differences in percentages of certain elements from those of the reference were of any patentable significance, the court affirmed the rejection on the ground that the claims did not define patentable novelty over the prior art.

In the present case, there clearly is a very substantial overlapping between the claimed ranges and those of Payson as is apparent from the following comparison of representative claim 1 and analysis IV of Payson:

|  | Claim 1 % | Payson IV % |
|---|---|---|
| Carbon | 0.30 to 0.90 | 0.45 to 0.70 |
| Chromium | 18.0 to 30.0 | 18.0 to 25.0 |
| Nickel | 15.0 to 35.0 | 12.0 to 25.0 |
| Manganese | 0.8 to 4.0 | 0.5 to 4.0 |
| Silicon | 0.9 to 3.5 | 0.30 to 3.5 |

Thus Payson discloses proportions of every ingredient which fall within the range of claim 1. The same is true as to the claim 2 ranges corresponding to the "narrower range" appellants disclose, with the percentage of carbon there, 0.35 to 0.75%, coming even nearer to coincidence with the reference figure. It is also apparent that appellants' "single preferred composition" falls within the ranges of Payson's analysis IV.

Appellants urge that Payson did not recognize any advantages in the specific limits claimed by them, citing decisions in United Chromium, Inc. v. International Silver Co., 60 F.2d 913 (2d Cir. 1932) and Pittsburgh Iron & Steel Foundries

Co. v. Seaman-Sleeth Co., 248 F. 705 (3d Cir. 1917). In the first of those cases, patentability was held to result from the discovery of a particular condition essential to successful operation of an electroplating process and, in the other, an alloy which possessed physical characteristics of structure and performance distinguishing it from prior art metals and making it "a new article of manufacture" was found to be patentable. We find neither case apposite here.

Appellants have failed to demonstrate that the ranges of elements or the particular single composition they prefer possess properties distinct from alloys having the ranges of composition of Payson's analysis IV. The evidence submitted by appellants consists of three tables of results of cantilever creep tests reported in the application and three charts corresponding thereto. Two of those tables are said to show "criticality of the carbon range" in imparting low creep "at high temperatures." The third purports to show "the criticality of manganese content of one alloy."

Generally the percentages of carbon and manganese referred to in the tables of the application fall within both appellants' claimed range and analysis IV, or outside both ranges. Only two values of carbon content reported fall within appellants' range and outside the analysis IV range, one of them providing slightly less creep strength than alloys falling in both ranges, and the other slightly more. All but two of the manganese percentages reported fall in both ranges. One of those two percentages falls outside both ranges and the other, .72, which falls within analysis IV and outside appellants' range, provides creep strength differing but slightly from the alloys having a manganese content within both ranges. Since the claims include no limitation that precludes an alloy which is to be age hardened, the fact that Payson so treats his alloy is of no consequence. Nor is any significance seen in appellants' contention that their

alloys may be used at temperatures between 1400° F. and 2000° F. There is nothing to demonstrate that alloys having the composition ranges of Payson tend to be any less satisfactory than appellants' alloy at high temperatures. As noted previously, Payson states that the most important application of his steels will be for high temperature service "where resistance to rupture under high stress conditions is required together with oxidation resistance." Payson specifies one use to be for "the exhaust valve of automotive engines for which good strength is required so that the valve will resist stretching at temperatures up to 1600° F. with stresses up to about 10,000 p.s.i. * * *." Thus, even assuming arguendo appellant to have discovered that ranges of some constituents are critical to certain properties, we are not convinced of novelty in the *claimed range of compositions* since Payson discloses *those* properties *for substantially the same ranges* of compositions.

Appellants further argue that composition ranges described in Payson will "in many instances develop sigma iron which has extremely poor creep characteristics * * *." Not only is that contention unsupported by the record, but it also provides no indication of any distinction between appellants' ranges and the equivalent ranges of Payson's untreated alloy composition.

For the foregoing reasons, we consider, as did the examiner, that claim 1 and the other alloy claims are anticipated by the disclosure of Payson. See In re Nehrenberg, supra. Since Payson suggests use of his steel for valves capable of withstanding high temperatures, the subject matter of claims 5–10 to an "article" or a "furnace part" made of the corresponding alloys are plainly obvious under 35 U.S.C. § 103.

The decision is affirmed.

Affirmed.

SMITH, J., concurs in the result.