**Application of Edward M. MARSHALL.**

**Appeal No. 77–625.**

United States Court of Customs and Patent Appeals.

June 30, 1978.

**302**

Edward D. O'Brian, Anaheim, Cal., atty. of record, for appellant.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents; Jack E. Armore, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, and MILLER, Judges.

LANE, Judge.

This is an appeal from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the examiner's rejection under 35 U.S.C. § 102 of claims 1–4 and entering a new ground of rejection under 37 CFR 1.196(b) of claims 5–9 under 35 U.S.C. § 103. We reverse both rejections.

## BACKGROUND

*Invention*

Normally, when food passes through the terminal region of the stomach, nerve endings there stimulate the release of two hormones, secretin and pancreozymin. These hormones then trigger the production and release of pancreatic enzymes necessary for digestion in the small intestine.

Applicant's weight control process involves anesthetizing these nerve endings with an orally administered anesthetic containing 50–2,000 mg of oxethazaine. This prevents the release of secretin and pancreozymin which in turn interferes with the production and release of the pancreatic enzymes. Thus, food passing through the small intestine is not digested and does not contribute calories to the body.

The following claims are before us on appeal:

1. In a weight control process in which a quantity of food is consumed and passes through the gastro intestinal digestive tract of a living body the improvement which comprises:

said quantity of food including foodstuffs requiring digestion caused by pancreatic enzymes for absorption into the bloodstream from the small intestine,

periodically anesthesizing [sic] the nerve endings in the digestive tract which release hormones when contacted by food passing through the digestive tract so as to trigger the release of said pancreatic enzymes into the digestive tract by the pancreas prior to said quantity of food contacting said nerve endings only prior to the passage of food into said digestive tract, said anesthetization being carried out to an extent effective and at a time effective to inhibit said nerve endings from releasing sufficient hormones to cause the release of said pancreatic enzymes which will contact said food as it passes through the digestive tract,

said anesthetization serving to prevent the release of said hormones when said nerve endings are contacted by said quantity of food, this having the effect of preventing release of said enzymes by the pancreas to the digestive tract so that said food passes through the digestive tract without being digested so that it is [sic not] capable of being absorbed into the bloodstream as a consequence of the absence of said enzymes.

2. A weight control process as claimed in claim 1 wherein:

said nerve endings are anesthesized [sic] by orally taking a quantity effective to cause said inhibition of an anesthetic means coated with a coating means which is effective to delay the release of said anesthetic means until said anesthetic means reaches the vicinity of said nerve endings in the digestive tract.

3. A weight control process as claimed in claim 2 wherein:

said anesthetic means is oxethazaine.

4. A weight control process as claimed in claim 2 wherein:

said anesthetic means is orally taken with an adherence means for causing said anesthetic means to adhere to the interior of the digestive tract.

5. A weight control process as claimed in claim 4 wherein:

said adherence means is albumin and is admixed with said anesthetic means, said anesthetic means and said albumin both being coated with said coating means.

6. A weight control process as claimed in claim 2 wherein:

from about 50 to about 2,000 milligrams of said anesthetic means are taken at one time, said time being prior to food being taken into the digestive tract.

7. A weight control process as claimed in claim 2 wherein:

from about 200 to about 800 milligrams of said anesthetic means are taken at one time, said time being prior to food being taken into the digestive tract.

8. A weight control process as claimed in claim 1 wherein:

said nerve endings are anesthesized [sic] by orally taking a quantity effective to cause said inhibition of an anesthetic means coated with a coating which will delay the release of said anesthetic means until said anesthetic means reaches the vicinity of said nerve endings in the digestive tract,

said anesthetic means is oxethazaine, and

from about 50 to about 2,000 milligrams of said anesthetic means are taken at one time, said time being prior to food being taken into the digestive tract.

9. A weight control process as claimed in claim 8 wherein:

said anesthetic means is orally taken with adherence means for causing said anesthetic [sic means] to adhere to the interior of the digestive tract, and

said adherence means is albumin and is admixed with said anesthetic [sic means], said anesthetic [sic means] and said albumin both being coated with said coating.

*Prior Art*

The references relied upon are: the PHYSICIAN'S DESK REFERENCE 1522–23 (25th ed. 1971) (PDR); and J. Slayback, E. Swena, J. Thomas, L. Smith, *The Pancreatic*

*Secretory Response to Topical Anesthetic Block of the Small Bowel*, 61 SURGERY 591 (1967) (Slayback).

The PDR describes drugs containing the anesthetic oxethazaine for the treatment of esophagitis, gastritis, peptic ulcer and irritable colon syndrome. The recommended adult oral dose of these drugs is one or two teaspoons (10–20 mg oxethazaine) four times daily, fifteen minutes before meals and at bedtime. The PDR expressly warns against exceeding the recommended dosage. Regarding the use of these drugs in the treatment of peptic ulcer, the PDR explains that topical application of this local anesthetic inhibits the release of the acid-stimulating hormone, gastrin.

Slayback is an article reporting an investigation into the mechanism responsible for the release of the pancreatic secretory hormones, secretin and pancreozymin. Researchers found that application of the anesthetic oxethazaine HC1 to isolated segments of the small intestine of surgically altered dogs caused a substantial reduction in the release of both secretin and pancreozymin. These results were consistent with the hypothesis that secretin and pancreozymin release is controlled by a local neural mechanism similar to the one which had been shown to control the release of the gastric secretory hormone, gastrin.

*Proceedings Below*

The examiner rejected claims 1–4 under 35 U.S.C. § 102 as anticipated by the PDR and also rejected claims 1–9 under 35 U.S.C. §§ 102/103 as anticipated or obvious over a patent to Pober.[1] The board affirmed the 102 rejection of claims 1–4 but reversed the 102/103 rejection of claims 1–9 and entered a new ground of rejection under 37 CFR 1.196(b) rejecting claims 5–9 under 35 U.S.C. § 103 as obvious in view of the combined teachings of PDR and Slayback.[2]

---

1. U. S. patent No. 3,740,440, issued June 19, 1973, for "Method of Inhibiting Appetite for Food."

2. The board does not explain why this new ground of rejection was not applied to claims 1–4 as well.

## OPINION

### 102 Rejection

■ Rejections under 35 U.S.C. § 102 are proper only when the claimed subject matter is identically disclosed or described in the prior art. *In re Arkley,* 455 F.2d 586, 587, 59 CCPA 804, 807, 172 USPQ 524, 526 (1972). In other words, to constitute an anticipation, all material elements recited in a claim must be found in one unit of prior art. *Soundscriber Corp. v. United States,* 360 F.2d 954, 960, 175 Ct.Cl. 644, 148 USPQ 298, 301 (1966). This basic principal of patent law has not been disturbed by our recent decision, *In re Samour,* 571 F.2d 559, 197 USPQ 1 (Cust. & Pat.App.1978), in which we affirmed a § 102(b) rejection of claims to a chemical compound based on a primary reference which disclosed the compound and additional references which established that a method of preparing the compound would have been obvious to one skilled in the art. In *Samour,* every material element of the claimed subject matter, the chemical compound, could be found in the primary reference, a disclosure of that compound.

■ Applying this rule of law to the present case, we must reverse the board's rejection of claims 1–4 under 35 U.S.C. § 102 since the primary reference, the PDR, does not disclose every material element of the claimed subject matter. These claims are directed to a weight control process. Applicant uses an effective amount of the anesthetic, oxethazaine, to inhibit release of the pancreatic secretory hormones, secretin and pancreozymin, in order to control weight. The PDR, however, teaches using drugs containing the anesthetic oxethazaine to inhibit release of the acid-stimulating hormone, gastrin, in order to treat esophagitis, gastritis, peptic ulcer and irritable colon syndrome. Nothing in the PDR remotely suggests taking oxethazaine to lose weight. If anyone ever lost weight by following the PDR teachings it was an unrecognized accident. An accidental or unwitting duplication of an invention cannot constitute an anticipation. *In re Felton,* 484 F.2d 495, 500, 179 USPQ 295, 298 (Cust. & Pat.App.1973).

### 103 Rejection

■ The board seems to have combined: (1) the teaching of the PDR that oral administration of oxethazaine inhibits release of gastrin, (2) the teaching of Slayback that secretin and pancreozymin release is controlled by a local neural mechanism similar to the one which controls release of gastrin, and (3) the art-recognized fact that secretin and pancreozymin control the production and release of pancreatic enzymes necessary for digestion in the small intestine, to conclude that applicant's method of controlling weight by anesthetizing the nerve endings that stimulate the release of secretin and pancreozymin would have been obvious.

The problem with this rejection is that nowhere in any reference is there any suggestion to control weight by turning off the production and release of pancreatic enzymes. Although it has long been known that pancreatic enzymes are involved in digestion, from this record it appears that applicant is the first to suggest controlling weight by decreasing the quantity of pancreatic enzymes in the small intestine. To say this would have been obvious is to resort to impermissible hindsight.

Moreover, the PDR appears to teach away from using effective amounts of the anesthetic oxethazaine since it expressly cautions against exceeding the recommended dose of 10–20 mg. This would not be an effective amount for controlling weight by appellant's process. Although Slayback, which discusses tests conducted solely on dogs, recognizes that higher concentrations of oxethazaine will produce "complete absence of stimulation of hormonal release," this does not negate the PDR warning with respect to the oral administration to humans. Known disadvantages of a drug which would naturally discourage the search for new uses of that drug may be taken into account in determining obviousness. See *United States v. Adams,* 383 U.S. 39, 52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

Accordingly, for the reasons set forth herein, the decision of the board is *reversed.*[3]

REVERSED.

MARKEY, Chief Judge, dissenting-in-part, with whom BALDWIN, J., joins.

Though I wholeheartedly agree with the majority's treatment of the § 102 issue, I respectfully dissent from the majority's conclusion of non-obviousness under § 103.

The majority agrees that the board considered "the art recognized fact that secretin and pancreozymin control the production and release of pancreatic enzymes necessary for digestion in the small intestine." Nowhere in the record is there any dispute on that point. Moreover, the majority also recognizes that "it has long been known that pancreatic enzymes are involved in digestion."

Appellant and all others having ordinary skill in the art knew that pancreatic enzymes play a major role in the digestion of food. If food is not digested, it is excreted without being absorbed into the body. If food is not absorbed, the body cannot gain weight. It follows, therefore, that decreasing pancreatic enzyme quantity (or eliminating it altogether) must decrease weight. The particular compound chosen by appellant to shut off or decrease the flow of pancreatic enzymes was known in the art and used for that purpose.

---

3. The board rejected only claims 5–9 under 35 U.S.C. § 103. In the interest of judicial economy, we note that our reversal of that rejection is not based on any limitations of claims 5–9 not found in broader claims 1–4 as well.