**In re Richard E. WOODRUFF.**

No. 90–1095.

United States Court of Appeals,
Federal Circuit.

Nov. 20, 1990.

Patrick F. Bright, Bright & Lorig, P.C., Los Angeles, Cal., argued, for appellant.

Richard E. Schafer, Associate Sol., Office of the Sol., Arlington, Va., argued for appellee. With him on the brief was Fred E. McKelvey, Sol.

Before RICH and PLAGER, Circuit Judges, and CONTI, Judge.[*]

RICH, Circuit Judge.

Woodruff appeals from the September 7, 1989 decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), Appeal No. 86–2814, affirming the rejection of claims 27–34 in Ser. No. 741,610 as unpatentable under 35 U.S.C. § 103. We affirm.

## BACKGROUND

Woodruff's patent application is entitled "Method for Inhibiting Fungal Growth on Refrigerated Fresh Fruits and Vegetables." It discloses that the growth of fungi on fresh fruits and vegetables can be greatly reduced by storing the vegetables in a specified modified atmosphere. This atmosphere differs from ordinary air primarily in the decrease in the amount of oxygen present and an increase in the amount of carbon monoxide.

Although claims 27–34 are appealed, we need consider only independent claims 27 and 31 since Woodruff does not here argue, nor did he argue to the Board, that the dependent claims are separately patentable. Claim 27 reads:

27. A process for inhibiting the growth of fungi on fresh leafy and head vegetables comprising maintaining said fresh leafy and head vegetables in modified gaseous atmosphere including carbon dioxide in an amount from 0 to about 20% by volume, molecular oxygen in an amount of about 1% to about 20% by volume, carbon monoxide in an amount

---

[*] Senior District Judge Samuel Conti of the Northern District of California, sitting by designation.

of about 3% to about 25% by volume, with the remainder being substantially all molecular nitrogen, for a time sufficient to inhibit the visible growth of fungi on said fresh leafy and head vegetables, and at a temperature in the range of about 29° F. to about 60° F.

Independent claim 31 differs from claim 27 only in stating the carbon monoxide limitation to be "in an amount of more than 5% to about 25% by volume."

The sole reference relied upon by the Board in rejecting the appealed claims is U.S. Patent No. 3,453,119 to McGill (McGill patent) which is directed to a method of storing fresh leafy and head vegetables (such as lettuce) in order to "maintain their fresh appearance ... even over extended periods of time." The disclosure indicates that the method retards "deterioration changes on storage including respiratory deterioration changes, bacterial deterioration changes and other enzymatic deterioration changes." Like Woodruff's method, McGill's method consists of storing the vegetables in a modified atmosphere and at a lower temperature. The following is a comparison of the atmospheres and temperatures claimed in Woodruff's application and those disclosed in McGill (in approximate percent by volume).

| Woodruff Claim 27 | Woodruff Claim 31 | McGill Patent |
|---|---|---|
| 0–20% $CO_2$ | 0–20% $CO_2$ | 0–5% $CO_2$ |
| 1–20% $O_2$ | 1–20% $O_2$ | 1–10% $O_2$ |
| 3–25% CO | >5–25% CO | 1–5% CO |
| balance $N_2$ | balance $N_2$ | balance $N_2$ |
| 29–60° F | 29–60° F | 32–40° F |

As can be seen, except for the carbon monoxide concentration, all of the ranges of gas concentrations and temperature set forth in the McGill patent are completely within those recited in claims 27 and 31. With respect to the CO concentration, there is an overlap between the percentages of the McGill patent and claim 27, while the percentages of the McGill patent and claim 31 are roughly contiguous.

Woodruff presented a number of declarations to the PTO in support of his contention that the claims are not rendered obvious by the McGill patent. A declaration by reference-patentee Dr. John N. McGill states that his patent does not teach that fungi are a problem in leafy and head vegetables. Dr. McGill further states that at the time he was doing the research which formed the basis of the McGill patent, he was concerned only with bacteria control and the prevention of "butt-end discoloration" of lettuce, and made no observations as to the growth or lack of growth of fungi on lettuce. This latter contention is supported by selected pages from Dr. McGill's assistant's laboratory notebook. Dr. McGill's declaration also states that, in his opinion as an expert in the field, "processes that control bacteria and slime in leafy head vegetables do not necessarily control fungi and vice-versa," and that the McGill patent "does not teach or suggest to one of ordinary skill in the relevant art how to control fungi in leafy and head vegetables." Dr. McGill's declaration is corroborated by Dr. John H. Silliker, another expert in the art, and by Mr. James R. Lugg, the president of TransFRESH Corporation.[1]

Woodruff also presented the declaration of Mr. Laurence D. Bell, another Trans-FRESH employee. Mr. Bell conducted tests comparing the fungi-inhibiting qualities of processes within the scope of claims 27 and 31 with the commercial embodiment of McGill's method used by TransFRESH. According to this declaration, TransFRESH employs a method of storing fresh vegetables wherein the initial concentration of

1. TransFRESH Corp. is the assignee of both Woodruff's application and of the now-expired McGill patent.

carbon monoxide is about 4.5%, but is allowed to diminish significantly over the first few days of storage. The declaration shows that for 7 and 14 day test periods, the methods within the scope of claims 27 and 31 were much better at preventing fungal growth than was the commercial embodiment of McGill's method.

In affirming the rejection of claims 27–34 under 35 U.S.C. § 103, the Board focussed on the teaching in the McGill patent of "inhibiting deterioration generally," noting that it was well-known in the art that fungi cause deterioration in leafy vegetables such as lettuce. The Board also relied heavily on a statement in the McGill patent that leafy vegetables may be stored in the disclosed modified atmosphere "for as much as 14 days without substantial loss in appearance," noting that fungi growth would certainly have an adverse impact on the appearance of leafy vegetables. Finally, the Board considered each of the declarations submitted by Woodruff, but concluded that these were insufficient to overcome the rejection.

## OPINION

■ At the outset, we note that we review an obviousness determination by the PTO *de novo*, *In re De Blauwe*, 736 F.2d 699, 703, 222 USPQ 191, 195 (Fed.Cir.1984), while our review of factual findings is under the clearly erroneous standard. *In re Caveney*, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985).

■ We first look to determine the differences between the claimed invention and the prior art. Claims 27 and 31 are process claims comprising the single step of maintaining vegetables in a specified atmosphere for a specified time (a time sufficient to inhibit the visible growth of fungi).

The atmospheres recited in claims 27 and 31 are anticipated by the atmosphere taught in the McGill patent except for the overlapping or adjacent ranges of carbon monoxide concentration. Woodruff argues, with respect to claim 31, that there is not simply an *overlap* in ranges, but a *difference* in ranges, since the McGill patent teaches a maximum CO concentration

of 5%, while claim 31 requires a CO concentration of "more than 5%." We agree, however, with the Board that the disclosure in the McGill patent of a carbon monoxide concentration of "about 1–5%" does allow for concentrations slightly above 5%.

The actual time limitation of claims 27 and 31 is also met by McGill's disclosure. Claims 27 and 31 state that the vegetables should be maintained in the modified atmosphere "for a time sufficient to inhibit the visible growth of fungi." According to the examples given in Woodruff's specification, the time required to show whether or not there has been an inhibition of fungi on leafy and head vegetables is on the order of 6–19 days. As the Board found, the McGill patent discloses storing the vegetables in the modified atmosphere for 14 days "without substantial loss in appearance." Thus, the time taught by the McGill patent for storing vegetables in a modified atmosphere is within the range which Woodruff's disclosure indicates is "sufficient to inhibit the visible growth of fungi," or at least demonstrate inhibition.

Woodruff, however, maintains that the above language ("time sufficient to inhibit the visible growth of fungi") is not only a time limitation but is also a *purpose* limitation, i.e., the claim requires that one be intending to inhibit fungal growth when performing the claimed method step. Since, argues Woodruff, the prior art did not recognize the fungi-inhibiting property of Woodruff's method, the prior art could not render obvious a method having the purpose of inhibiting fungal growth.

Judging from the evidence before us, Woodruff may have been the first to recognize the fungal-inhibiting benefit of the method. On the other hand, we do not agree that what Woodruff has allegedly discovered and claimed can be termed a new *purpose* for performing the claimed method. The generic purpose of the method disclosed in McGill is to prevent the *deterioration* of fresh vegetables, which certainly encompasses the specific benefit disclosed by Woodruff. While the McGill patent refers only to the effectiveness of

the method against respiratory, bacterial, and enzymatic deterioration, Woodruff's disclosure that the method is *also* effective against fungi relates to but one other known cause of deterioration.

Therefore, there are two differences between the claimed invention and the prior art: one, the slightly different ranges of carbon monoxide concentration used in the modified atmosphere; and two, the newly disclosed *benefit* of inhibiting the growth of fungi. We are of the opinion that these differences do not render the claimed process patentable.

■ It is a general rule that merely discovering and claiming a new benefit of an *old* process cannot render the process again patentable. *Verdegaal Bros., Inc. v. Union Oil Co. of Calif.*, 814 F.2d 628, 632–33, 2 USPQ2d 1051, 1054 (Fed.Cir.), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *Bird Provision Co. v. Owens Country Sausage, Inc.*, 568 F.2d 369, 375, 197 USPQ 134, 139 (5th Cir.1978). While the processes encompassed by the claims are not entirely *old*, the rule is applicable here to the extent that the claims and the prior art overlap.

The cases of *In re Shetty*, 566 F.2d 81, 195 USPQ 753 (CCPA 1977) and *In re Marshall*, 578 F.2d 301, 198 USPQ 344 (CCPA 1978) do not, as urged by Woodruff, compel a contrary result. In both of these cases, the applicant had discovered a completely new use for either an old compound (*Marshall*) or an obvious compound (*Shetty*). In the present case, what Woodruff terms a "new use" (preventing fungal growth) is at least generically encompassed by the prior art purpose of preventing the deterioration of leafy and head vegetables.

Nor can patentability be found in the difference in carbon monoxide ranges recited in the claims. The law is replete with cases in which the difference between the claimed invention and the prior art is some range or other variable within the claims. *See, e.g., Gardner v. TEC Sys., Inc.*, 725 F.2d 1338, 220 USPQ 777 (Fed.Cir.), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 60 (1984); *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980); *In re*

*Ornitz*, 351 F.2d 1013, 53 CCPA 716, 147 USPQ 283 (1965); *In re Aller*, 220 F.2d 454, 42 CCPA 824, 105 USPQ 233 (1955). These cases have consistently held that in such a situation, the applicant must show that the particular range is *critical*, generally by showing that the claimed range achieves unexpected results relative to the prior art range. *Gardner*, 725 F.2d at 1349, 220 USPQ at 786 (obviousness determination affirmed because dimensional limitations in claims did not specify a device which performed and operated differently from the prior art); *Boesch*, 617 F.2d at 276, 205 USPQ at 219; *Ornitz*, 351 F.2d at 1016–17, 147 USPQ at 286; *Aller*, 220 F.2d at 456, 105 USPQ at 235. Woodruff has made no such showing in the present case. The only test results presented by Woodruff are the results reported by Mr. Bell, comparing Woodruff's claimed invention to the *commercial embodiment* of McGill's method. While Woodruff's invention certainly showed superior fungi-inhibiting effect in these tests, the critical comparison is not with the commercial embodiment of McGill's invention, but with the method taught in his patent. According to Mr. Bell's declaration, the carbon monoxide concentration in the test group representing the commercial embodiment of McGill's invention was allowed to drop to 0% after 4 days. The McGill patent does not teach allowing the concentrations of any of the gases to fall out of the suggested ranges.

## CONCLUSION

In the absence of adequate evidence showing that ranges of carbon monoxide concentration recited in claims 27–34 are critical, the Board correctly affirmed the rejection of the claims under 35 U.S.C. § 103.

AFFIRMED.