48 CCPA

### Application of Fred N. HILL.

### Patent Appeal No. 6594.

United States Court of Customs
and Patent Appeals.

Dec. 22, 1960.

Louis C. Smith, Jr., New York City, and Paul A. Rose, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection of claims 1–5 and 7–12, all of the claims in appellant's application for a patent entitled "Catalyst and Method for the Production of Ethylene Oxide" on the ground that the claims are unpatentable over certain prior art.

Claims 1, 7, and 12 are representative of the appealed claims and read:

"1. Process for preparing an active silver catalyst effective for the oxidation of ethylene to ethylene oxide which comprises forming an aqueous solution of silver nitrate, immersing particles of a porous catalyst support in said solution, heating the solution and immersed particles to degasify the support particles and to impregnate the catalyst support particles uniformly with said solution, drying said particles in the absence of any substantial amount of supernatant silver nitrate solution, and reducing the silver nitrate content of said particles to silver by treating with hydrogen gas at an elevated temperature between 150°C. and 250°C.

"7. Process for preparing a promoted silver catalyst effective for the oxidation of ethylene to ethylene oxide which comprises forming an aqueous impregnating solution of silver nitrate and a water-soluble salt of an alkaline-earth metal of the group consisting of barium, calcium and strontium, immersing particles of a porous catalyst support in said solution, heating the solution to impregnate the catalyst support particles uniformly with said solution, drying said particles in the absence of any substantial amount of supernatant impregnating solution, and reducing the silver nitrate in the impregnated particles to silver and the alkaline-earth metal salt in the particles to the oxide by treating with hydrogen at an elevated temperature between 150°C. and 250°C. to form a reduced catalyst containing an amount of the oxide equivalent to about 0.1% to about 1.5% of the alkaline-earth metal by weight of the silver.

"12. A promoted silver catalyst effective for the oxidation of ethylene to ethylene oxide comprising a porous support throughout the pores of which reduced silver is uniformly deposited without completely filling and clogging said pores so as to hinder access of gas thereto, said reduced silver being also intimately mixed with an oxide of an alkaline-earth metal of the group consisting of calcium, barium and strontium in an amount equivalent to between 0.1% and 1.5% of the alkaline-earth metal by weight of the silver, the ratio of silver to alkaline-earth metal oxide being constant throughout the catalyst mass and the silver content of said catalyst mass being between 5% and 16% by weight."

The references relied on are:
Carter    2,125,333    August 2, 1938.
Aries    2,477,435    July 26, 1949.
Murray, "Australian J. Science Research," Vol. 3A, page 437, 1950.

The claims relate to a process for preparing promoted and unpromoted silver catalysts said to possess a high de-

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28 U.S.C.

gree of selectivity and activity for the oxidation of ethylene to ethylene oxide. Claim 12 defines the catalysts specifically. The basic steps in preparing the catalyst involve immersing a suitable catalyst support in an aqueous solution of silver nitrate, heating the mixture to degasify the support and insure uniform impregnation, removal of any excess silver nitrate solution from the impregnated support, followed by drying and reduction of the silver nitrate to silver metal in the presence of hydrogen gas at a temperature between 150° and 250°C. The promoted catalysts are prepared by adding a small amount of a water soluble salt of the promoter metal (calcium, strontium or barium) to the silver nitrate solution and co-impregnating the support with the solution. In the reduction step the promoter salt is converted to the corresponding oxide of calcium, strontium or barium.

The Carter patent, which is the basic reference, discloses a method for preparing a silver catalyst used in oxidizing ethylene to ethylene oxide by soaking a suitable carrier in an aqueous solution of silver nitrate, evaporating the mixture to dryness and subjecting the dried carrier impregnated with silver nitrate to reduction with hydrogen gas at approximately 300°C. It is further disclosed that the catalyst may be promoted by the addition of small amounts of alkali or alkaline earth metal compounds to the carrier material.

The Aries patent discloses a process for preparing a silver catalyst effective in the oxidation of ethylene to ethylene oxide by soaking a porous carrier in a solution of a silver salt of an organic acid at 100°–125°C. to impregnate the carrier, separating excess liquid followed by drying the carrier. The silver salt is then thermally decomposed to silver-silver oxide at 300°–500°C. in the presence of an inert gas. It states that hydrogen should not be used as the blanket gas during the decomposition step.

The Murray article describes co-precipitating a mixture of silver and barium carbonates from a solution of the cor-

responding nitrates, followed by drying the mixture and reduction with hydrogen gas to form a catalyst.

The examiner divided the claims into two groups, rejecting claims 1–5, inclusive, the unpromoted catalyst group, as unpatentable over Carter in view of Aries, and claims 7–12, inclusive, the promoted catalyst group, as unpatentable over the same combination of references plus Murray. The board relied solely on Carter and Aries in affirming the examiner's rejection of all the claims and, accordingly, we will limit our discussion to those two references.

The board found that the step of heating the silver nitrate with the support immersed therein to degasify the support and insure uniform impregnation, and the step of separating the excess liquid before drying, were anticipated by Aries, and that it did not "involve invention" to use those expedients in the Carter process. As to the lower reduction temperature claimed in appellant's process over the 300°C. disclosed by Carter, the board was of the opinion that did not "amount to invention" and stated "that it is within the province of the skilled chemist to experiment to determine conditions that will give optimum results and that is what appellant appears to have done in the present case." With respect to claims 7–12 the board found that Carter taught the use of very small amounts of alkaline earth metal compounds as promoters, and that, since the amounts stated in the claims did not appear to be critical, that feature did not constitute a patentable distinction over the amounts disclosed by Carter.

Appellant contends that the references cannot properly be combined and that, therefore, the rejection was improper. It is urged that there is nothing in the references which would attain the object of the claimed invention which is to produce a catalyst for the oxidation of ethylene to ethylene oxide having both a high degree of activity and selectivity. It is further urged that even if the references are properly combined they still do not meet the claims which call for a

lower rejection temperature than shown by Carter, and that this has been shown to be critical.

The applicable law determinative of whether references are properly combined is set forth in In re Edwards, 232 F.2d 641, 646, 43 CCPA 884:

"It is well settled that prior patents may be combined to anticipate claims. In re Delancey, 177 F.2d 377, 37 C.C.P.A. (Patents) 760. However, a question which should be considered when references are combined is whether these references suggest doing the thing which applicant has done. In re Fridolph, 134 F.2d 414, 30 C.C.P.A. (Patents) 939. It has also been stated that when references are combined to negate patentability, it should be considered whether one skilled in the art with the references before him could have made the combination of elements claimed without the exercise of invention. In re Goepfrich, 136 F.2d 918, 30 C.C.P.A. (Patents) 1181. Furthermore, a claim may be sometimes properly rejected on a combination of references even though that combination does not show all the limitations in the claim, providing such limitations as are not shown are not inventive and patentable over the disclosures of the prior art. In re Bisley, 197 F.2d 355, 39 C.C.P.A. (Patents) 982; In re Oakes, 140 F.2d 669, 31 C.C.P.A. (Patents) 833."

Applying the law as set forth above to the facts of this case it is our opinion that the references were properly combined and that the rejection of the claims based on that combination was proper.

Carter discloses appellant's basic process except that the impregnating and drying steps are slightly different and the reduction is carried out at a higher temperature. However, the first two steps in appellant's process are clearly old in Aries which teaches impregnating a catalyst support by soaking it in a silver salt solution at 100°–125°C. and drawing off excess liquid before drying the impregnated carrier. It is stated in the reference that " * * * the oxidation of the olefin to the corresponding olefine oxide employing molecular oxygen is dependent on the use of a porous carrier coated with a *uniform* layer of uniformly sized small particles of silver-silver oxide," (emphasis added). That statement fairly suggests the desirability of having a uniformly coated carrier in silver catalyst preparations and we are of the opinion that it would be obvious to a worker skilled in the art to use the Aries impregnating and drying steps where uniform distribution of catalytic material on a carrier is desired. Accordingly, we think it would be obvious to use those expedients in the Carter process. Appellant's argument that the references are mutually exclusive since they utilize different silver salts and methods of activating the catalyst (thermal decomposition v. hydrogen reduction) has been considered but is not deemed significant. It is clear that the operational method of impregnating is old in Aries, and, in our opinion, substituting that method in the Carter process would be obvious to a worker skilled in the art.

Appellant further urges that the claimed reduction temperature range of 150°–250°C. is critical, and that the use of reduction temperatures of "approximately 300°C" disclosed by Carter results in catalysts which give significantly lower yields of ethylene oxide in the catalytic oxidation of ethylene. To support that contention appellant relies on his own affidavit which compares the yield of ethylene oxide obtained using a catalyst reduced in the presence of hydrogen gas for 14 hours at 262°C. with the yield of ethylene oxide obtained using the catalyst described in Example IV of the application which was reduced in the presence of hydrogen gas at 204°C. for 18 hours and then at 250°C. for 6 hours. On the basis of those two tests alone appellant argues that a 10% lower yield of ethylene oxide is obtained by using catalysts reduced at temperatures above the claimed range.

In our opinion that single comparison is insufficient to establish criticality or patentability over the reference. Merely showing in one instance that a lower yield of ethylene oxide is obtained with a catalyst reduced at 12°C. above the claimed temperature range is not adequate to establish the criticality of that range. A sufficient number of tests at various temperatures above 250°C. should have been presented to clearly show the criticality of the range at which the alleged unobvious results were obtained. That appellant has not done. All the Hill affidavit shows is a single test involving a catalyst reduced at 262°C. for 14 hours, and that affords no basis for assuming that other catalysts reduced at higher temperatures such as the 300°C. reduction temperature of Carter would be less efficient than catalysts reduced at temperatures of 250°C. or below. Moreover, the one comparison made lacks evidentiary value since the times of reduction of the compared catalysts differ considerably. Consequently, it is inconclusive as a showing that the temperature difference is responsible for the lower yield.

In our opinion the selection of lower reduction temperatures over those disclosed by Carter was merely a matter of choice within the ordinary skill of the art. Appellant has not established that the difference is productive of any unobvious or unexpected result. It is our view that such difference represents an unpatentable variation over the prior art and since the other features of claims 1–5 are taught by the references, the feature which is not shown cannot render the claims patentable because it is not itself unobvious. In re Edwards.

Claims 7–11 have the additional element of coimpregnating the support with a solution of water soluble salt of a promoter metal and the silver nitrate. While it is not argued by appellant that Carter does not teach the use of small amounts of alkaline earth metal compounds as promoters, it is urged that Carter does not teach the simultaneous co-impregnation of the support with the promoter compound and the silver nitrate. We cannot agree with appellant's argument on that point since, in view of the desirability of uniformly impregnating the support with the silver salt solution as is evident from Aries, we think it would be suggested to those skilled in the art to add the promoter to the silver salt solution to obtain simultaneous co-impregnation of the support. Furthermore, we do not think that the specific proportions of promoter recited in the claims represent a patentable distinction over the "small amount" disclosed by Carter. Accordingly, we agree with the board as to the unpatentability of claims 7–11.

Claim 12 defines the promoted catalyst specifically without any limitations as to how it is made. We see nothing in that claim which is not anticipated by the prior art as previously discussed. It is, therefore, unpatentable.

The decision is affirmed.

Affirmed.