**In re Ben HUANG.**

No. 96–1126.

United States Court of Appeals,
Federal Circuit.

Nov. 12, 1996.

Francis A. Utecht, Fulwider, Patton, Lee & Utecht, of Long Beach, California, argued for appellant.

Kenneth R. Corsello, Associate Solicitor, U.S. Patent and Trademark Office, of Arlington, Virginia, argued for the Commissioner. With him on the brief were Nancy J. Linck, Solicitor, Albin F. Drost, Deputy Solicitor, and Scott A. Chambers, Associate Solicitor.

Before NEWMAN, PLAGER, and CLEVENGER, Circuit Judges.

Opinion for the court filed by Circuit Judge CLEVENGER. Circuit Judge NEWMAN dissents without separate opinion.

CLEVENGER, Circuit Judge.

Ben Huang (Huang) seeks review of the decision of the Board of Patent Appeals and Interferences (Board), *Ex parte Ben Huang,* Appeal No. 94–3535 (September 29, 1995), which held that all pending claims in Huang's application are obvious under 35 U.S.C. § 103 (1994), and, therefore, unpatentable. We affirm.

I

Huang's claimed invention is a shock absorbing grip, for tennis racquets or the like, consisting of a strip that is wrapped around the racquet handle. As shown in Fig. 8 of Huang's application (reproduced below), the strip is comprised of two layers: a textile layer 12 and a polyurethane layer 16. The user's hand grips the polyurethane layer 16 which is bonded to the textile layer 12, the bottom of which adheres to the racquet handle. The polyurethane layer 16 contains pores 22 which extend generally perpendicular to the longitudinal axis of the handle.

FIG.8

Huang admits that the prior art employed these same two layers in polyurethane/textile ratios ranging from a low of 0.111 to a high of 0.142.[1] Huang explains that the key as-

1. As do the parties, we refer to this group of prior art as "the admitted prior art."

pect of his invention lies in his discovery that greatly improved shock absorbing qualities may be obtained by increasing, above and beyond what existed in the prior art, the thickness of the polyurethane layer relative to the textile layer. Accordingly, claim 24 recites:

24. The combination of a handle [10] for an impact imparting device and a shock absorbing grip applied over such handle to conform to the external configuration of such handle, comprising:

a strip which is spirally wrapped about said handle, the strip consisting of

an open-pored textile layer [12] having an inner surface adhered to and abutting said handle and

a smooth closed pore polyurethane layer [16] having its inner surface bonded to the outer surface of the textile layer remote from said handle,

with the pores [22] of such polyurethane layer extending generally normal to the longitudinal axis of said handle,

the thickness ratio of the transverse central region of the polyurethane layer/textile layer being equal to or larger than approximately 0.18, and

with the textile layer providing strength for the polyurethane layer while the polyurethane layer both absorbs shocks and provides tackiness so as to inhibit slippage of a user's hand relative to said handle.

Claim 25 depends from claim 24 and requires a thickness ratio about equal to or greater than one.[2]

The examiner rejected these claims as obvious in view of three references: Russell, Onions, and Lau. On appeal, the Board determined that the examiner had impermissibly used Huang's application "as a template to pick and choose among isolated disclosures" to demonstrate that the claims were obvious. Nevertheless, the Board rejected the claims as being obvious in view of the admitted prior art and Lau.

The Board explained that the claims differed from the admitted prior art in that the claims recited thickness ratios for the polyurethane layer relative to the textile layer. The Board further explained that Lau teaches the use of a polyurethane layer in conjunction with a textile layer wherein the pores of the polyurethane layer absorb shock by compressing. Given Lau's teachings, the Board determined that the thickness of the polyurethane layer is a variable, the optimization of which is obvious in the absence of unexpected results. Because the application contained no evidence of unexpected results, the Board concluded that the prior art created a *prima facie* case of obviousness.

The Board further decided that Huang failed to prove that evidence of commercial success overcame the *prima facie* case. Huang's only evidence on this point consisted of a personal affidavit in which Huang asserted that: (1) Wilson Sporting Goods (Wilson) had purchased, over a five month period, approximately 750,000 grips for use on newly produced racquets; (2) Wilson had ordered approximately 200,000 grips as resale replacements for existing tennis racquets; (3) Huang's company had sold about 100,000 grips to parties other than Wilson; (4) since Huang began selling the claimed grip, sales of its prior grips had decreased by about 50 percent; (5) Huang's company had sold about 100,000 grips for use on baseball bat handles; and (6) in Huang's opinion, the commercial success of the grips derived from the claimed invention. The Board was not persuaded by these assertions because they were neither supported by an evidentiary showing nor placed in a meaningful context, e.g., market share or profitability. As a result, the Board rejected the pending claims.

Huang then requested that the Board reconsider its decision. Huang explained that he did not merely increase the thickness of the polyurethane layer; rather, he increased the thickness of the polyurethane layer while reducing the thickness of the textile layer so as to maintain the total thickness of the prior

**2.** The only remaining claim on appeal is claim 26, which Huang stipulates stands or falls with claim 24.

art grips. The Board rejected this argument because the claim contained no such limitation. Therefore, the Board declined to make any changes to its original decision.

Huang now appeals the Board's decisions, which we have jurisdiction to review pursuant to 28 U.S.C. § 1295(a)(4) (1994).

## II

A claimed invention is unpatentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103 (1994). The ultimate determination as to whether or not an invention is obvious is a legal conclusion based on underlying factual inquiries including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). We review the ultimate legal determination of obviousness without deference to the Board, while we review the underlying factual inquiries for clear error. *See Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 877, 27 USPQ2d 1123, 1128 (Fed. Cir.1993).

In applying this four part analysis, we first note that neither party disputes the scope and content of the prior art. Huang admits that the prior art grips have conventionally used a layer of polyurethane backed with a layer of textile material.[3] Huang also acknowledges that the Lau reference is relevant prior art because it discloses shock absorbing grips for sports equipment. Similarly, neither party disputes the level of skill in the art.

We thus turn to the third inquiry of the obviousness analysis: the differences between the prior art and the claimed invention. On appeal, Huang again asserts that his invention lies not only in the discovery that improved shock absorption qualities could be obtained by increasing the thickness of the polyurethane layer, but also in drastically reducing the thickness of the textile layer so as to maintain the overall thickness of the prior art grip. While this may accurately describe Huang's grips, our obviousness analysis focuses on the invention *as claimed.* Claims 24 and 25 contain no limitation relating to a decrease in the textile layer so as to maintain an overall thickness of the grip. Instead, the claims merely require polyurethane/textile thickness ratios in excess of those employed in the prior art grips.

The admitted prior art, which employs a strip consisting of a polyurethane layer on top of a textile layer, teaches almost all aspects of Huang's claimed invention. In his specification, Huang states that the prior art grips used the polyurethane layer simply for tackiness. Huang contends that his inventive contribution lies in his discovery that the polyurethane layer, with closed pores aligned normal to the longitudinal axis of the racquet, also absorbs shock.

This discovery does not constitute a patentable contribution to the art, however, because Lau also teaches the use of a polyurethane layer to absorb shock. Lau discloses a grip that contains three layers. One layer is made of textile material; and a second adjacent layer is made of closed pore polyurethane, with the pores oriented normal to the longitudinal axis of the equipment.[4] Lau teaches that "[t]he impact absorbing capability of the composite laminate derives [in part] from ... the compressible nature of *each* of the three layers *individually.*" (Emphasis added.) Therefore, Lau preceded Huang in

---

3. In his application, Huang does not explicitly describe the admitted prior art grips. Based on Huang's contention that his invention lies in increasing the thickness of the polyurethane layer, however, we deduce that the admitted prior art grips were spirally wrapped around the racquet handle and employed the textile layer adjacent to the racquet handle. This deduction is confirmed by a figure of the admitted prior art grips included in Huang's appeal brief.

4. The third layer is made of open pore polyurethane.

teaching that a polyurethane layer in a sports grip will absorb shock.[5]

Given that use of a polyurethane layer to absorb shock is not novel, Huang's contribution to the art could only lie in the specific thickness ratios recited in the claims. This court and its predecessors have long held, however, that even though applicant's modification results in great improvement and utility over the prior art, it may still not be patentable if the modification was within the capabilities of one skilled in the art, unless the claimed ranges "produce a new and unexpected result which is different in kind and not merely in degree from the results of the prior art." *In re Aller*, 42 C.C.P.A. 824, 220 F.2d 454, 456, 105 USPQ 233, 235 (1955); *see In re Woodruff*, 919 F.2d 1575, 1578, 16 USPQ2d 1934, 1936–37 (Fed.Cir.1990). As explained above, Lau teaches that shock absorption derives in part from the compressible nature of the polyurethane layer. Given that the polyurethane layer absorbs shock, one of ordinary skill would logically infer that increasing the amount of the shock absorbing material (the polyurethane) would lead to an increase in the amount of shock absorption.[6] Accordingly, one of ordinary skill would have experimented with various thicknesses to obtain an optimum range. Because Huang does not contend that he has achieved unexpected results by increasing the thickness of the polyurethane layer, the Board properly concluded that the prior art grips in combination with Lau created a *prima facie* case of obviousness.

## III

Finally, we turn to the fourth step of our obviousness analysis: objective evidence of nonobviousness. Once a *prima facie* case of obviousness has been established, the burden shifts to the applicant to come forward with evidence of nonobviousness to overcome the *prima facie* case. Relevant to this inquiry is objective evidence of commercial success, long-felt but unsolved needs, failure of others, and copying. *Graham*, 383 U.S. at 17–18, 86 S.Ct. at 693–94, 148 USPQ at 467.

As explained above, Huang's evidence on this point consists solely of a personal affidavit. Huang contends that the assertions contained therein of commercial success constitute strong evidence of nonobviousness and that the Board improperly denigrated that evidence by deciding that it had not been placed "in any meaningful context." We agree with the Board that Huang has not provided sufficient proof to establish either that his grips were commercially successful or that the sales resulted from the merits of the claimed invention.

## A

We first address the issue of whether Huang has proven that the grips were commercially successful. Huang asserts that the claimed invention has been commercially successful because he has sold several hundred thousand units to Wilson and others. Beyond these bare sales numbers, Huang provides no further evidence as to the degree of commercial success achieved by the grips.

In deciding whether or not a claimed invention is obvious, we have instructed the Patent and Trademark Office (PTO) that it must consider objective evidence of nonobviousness—e.g. commercial success. *In re Sernaker*, 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir.1983). In the *ex parte* process of examining a patent application, however, the PTO lacks the means or resources to gather evidence which supports or refutes the applicant's assertion that the sales constitute commercial success. *Cf. Ex parte Remark*, 15 USPQ2d 1498, 1503 (Bd.Pat.App. & Int.1990) (evidentiary routine of shifting burdens in civil proceedings inappropriate in *ex parte*

---

5. Huang contends that there is no suggestion to modify the admitted prior art by the teachings in Lau. This is not correct. In his application, Huang acknowledges that shock generated by impact is a well known problem in the art. This well known problem would have directed one of ordinary skill in the art to Lau, which is entitled "Shock Absorbing Sheet Material." *See Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573, 37 USPQ2d 1626, 1630

(Fed.Cir.1996) ("[A suggestion to combine] may also come from the nature of a problem to be solved, leading inventors to look to references relating to possible solutions to that problem.").

6. In fact, Fig. 2 of Lau itself discloses a grip wherein the closed pore polyurethane layer is thicker than the textile layer.

prosecution proceedings because examiner has no available means for adducing evidence). Consequently, the PTO must rely upon the applicant to provide hard evidence of commercial success.

██ In the present case, Huang has simply not provided sufficient information upon which the PTO could determine whether the grips were commercially successful. Although Huang's affidavit certainly indicates that many units have been sold, it provides no indication of whether this represents a substantial quantity in this market. This court has noted in the past that evidence related solely to the number of units sold provides a very weak showing of commercial success, if any. *See Cable Elec. Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1026–27, 226 USPQ 881, 888 (Fed.Cir.1985) (finding that sales of 5 million units represent a minimal showing of commercial success because "[w]ithout further economic evidence ... it would be improper to infer that the reported sales represent a substantial share of any definable market"); *see also In re Baxter Travenol Labs.,* 952 F.2d 388, 392, 21 USPQ2d 1281, 1285 (Fed.Cir.1991) ("[I]nformation solely on numbers of units sold is insufficient to establish commercial success."); *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1151, 219 USPQ 857, 861 (Fed.Cir.1983) (determination of obviousness not erroneous where evidence of commercial success consisted solely of number of units sold and where no evidence of nexus). On the basis of the limited information provided by Huang, we conclude that the Board did not clearly err in deciding that Huang failed to prove commercial success.

## B

██ Even assuming that Huang had sufficiently demonstrated commercial success, that success is relevant in the obviousness context only if there is proof that the sales were a direct result of the unique characteristics of the claimed invention—as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter. *See Cable Elec.,* 770 F.2d at 1027, 226 USPQ at 888. In other words, a nexus is required between the sales and the merits of the claimed invention.

██ Huang's affidavit contains a conclusory assertion that, in his opinion, the sales of the grips derive from the increased thickness of the polyurethane layer and the alignment of the pores. This merely represents the inventor's opinion as to the purchaser's reason for buying the product, and, alone, is insufficient. Instead, the applicant must submit some factual evidence that demonstrates the nexus between the sales and the claimed invention—for example, an affidavit from the purchaser explaining that the product was purchased due to the claimed features. In the present case, despite Huang's personal opinion, Wilson may have bought the grips due to lower manufacturing costs, the market position of Huang's company, prior relations between the two companies, or features of the product attractive to Wilson but unrelated to the patented subject matter. In sum, Huang simply has not carried his burden to prove that a nexus existed between any commercial success and the novel features claimed in the application.

## IV

In conclusion, the Board did not clearly err in its fact findings on the four factors underlying the obviousness analysis. Based on those factors, we agree with the Board that the inventions of the appealed claims would have been obvious. Accordingly, the Board's decision is

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, dissents.